(No. 4060

FRANK H. BREED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 10, 1948.*

JOHN R. KINLEY, for Claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for Respondent.

BERGSTROM, J.

Claimant, Frank Breed, filed his claim January 9, 1948 for compensation for complete and permanent disability, including pension, under the provisions of the Workmen's Compensation Act.

Claimant was employed by respondent in the Department of Public Works and Buildings, Division of

Highways, as a common laborer. On September 6, 1946, while so employed, he was one of a group of men assigned to pavement center striping operations on S. B. I. Route 2 in Winnebago County. Following the luncheon period that day the group and its equipment, a Walters cab-over-engine truck and a center striping machine, were driven to the southern limits of Rockton where the afternoon's work began. Claimant was riding in the cab of the truck. The truck was proceeding down the highway a short distance ahead of the striping machine to serve as a warning to traffic and protection to the striping machine. At approximately 1 P.M. the truck reached its position and reduced speed to approximately ten miles an hour. Claimant jumped from the moving truck to the pavement, and in doing so he stumbled and fell, suffering fractures of the right hip joint. He was then removed to his home in Durand, and the group foreman called Dr. C. A. Sattler of Drs. Robert McCulley and C. A. Sattler, Associates, Pecatonica. They then removed claimant by ambulance to Deaconess Hospital at Freeport. Claimant remained in the Deaconess Hospital until December 8, 1946, and was under observation and treatment until February 25, 1948. On March 2, 1948, Dr. McCulley submitted his final report with respect to claimant's condition, to the Division of Highways, as follows:

"Intertrochanteric fracture of the right femur. Treatment—A double Kirschner wire was placed in the lower end of the right femur. Patient was placed on Albee table and a double spica cast applied about the hip girdle and extending to both knees. The right femur was held in a position of external rotation and abduction by this procedure. This was carried out under general anesthesia. X-rays—Intertrochanteric of the right femur. Remarks—Walking caliper applied to right leg on February 18, 1947. Date patient was discharged—Feb. 25, 1948. Permanent disability—Permanently unable to return to manual labor."

We find that at the time of the accident the employer and employee were operating under the provisions of the

Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. We also find that the accident arose out of and in the course of claimant's employment.

Claimant had no children under sixteen years of age dependent on him for support, and his earnings from the Division of Highways in the year preceding his injuries totaled $841.50. His wage rate was 75c per hour and he earned $6.00 per day, based on an eight-hour day. Employees engaged in a capacity similar to that of claimant ordinarily worked less than 200 days a year, so that his compensation rate would be computed under Section 10, Par. (e) of the Workmen's Compensation Act. This would be $11.54 per week, increased by 20% or to $13.85 per week, the accident having occurred after July 1, 1945.

Claimant was paid compensation for total temporary disability in the amount of $1,151.99, based on 64 weeks at $18.00 per week, for the period from September 7, 1946 to and including November 29, 1947. He should have been paid on the basis of $13.85 per week, or a total of $886.40, so that he has been overpaid the amount of $265.59 for total temporary disability. Respondent also paid the sum of $953.31 for medical, hospital and ambulance service.

With respect to the permanent extent of claimant's injuries, Dr. McCulley testified on May 1, 1948, that he examined claimant on April 30, 1948, and that such examination disclosed the following facts with respect to claimant's condition:

"He had half an inch of shortening of the right leg, which was partially compensated for by having about a quarter inch lift put on the heel and sole of the right shoe. When he is lying on his back there is very marked limitation of rotation of his right hip joint. The rota-

tion is limited to about ten degrees, whereas in the left leg he had seventy-five degrees of rotation. When he is standing this same rotation is limited to about forty-five degrees on the right, whereas he still had a good seventy-five degrees of rotation on the left. There is a little limitation of motion on what we call the straight leg raising test. In other words, flat on his back, his right leg comes up to about seventy degrees and his left leg to eighty degrees. With him on his abdomen, he is able to extend his left leg the normal amount of around twenty degrees, but the right leg will not come back beyond the one hundred eighty degree angle. In other words, it is just right straight down. At all times the right knee is held in mild flexion, and can only be forcibly extended, and it immediately assumes its partially flexed position. I estimated the angle there about one hundred seventy degrees as compared with the normal of one hundred eighty. His right knee flexes to an angle of seventy-five degrees with the thigh, whereas the normal, or left side, flexes completely to an angle of only thirty degrees. There is no swelling of the leg and no circulatory disturbance. There is very little, if any, muscle atrophy."

He further testified that, in his opinion, this condition was permanent. Upon cross examination, when asked the degree of permanency, he considered it approximately sixty to seventy-five per cent loss of use of the right leg. None of his testimony was controverted and, from the record, we are of the opinion that claimant is entitled to an award based on sixty per cent permanent and complete loss of the use of his right leg, which would be computed on the basis of one hundred fourteen weeks at $13.85 a week, or a total of $1,578.90, from which must be deducted the overpayment of $265.59 for total temporary incapacity, leaving him entitled to a net award of $1,313.31.

An award is therefore given to claimant, Frank Breed, in the sum of $1,313.31, to be paid to him as follows:

$387.80 accrued, is payable forthwith;

$925.51 is payable in weekly installments of $13.85 beginning on June 19, 1948, for a period of 66 weeks, with an additional final payment of $11.41.

Alice V. Dickinson, Court Reporter, Court House, Rockford, Illinois, was employed to take and transcribe

the evidence in this case and has rendered a bill in the amount of $24.00. The Court finds the amount charged is fair, reasonable and customary, and an award is hereby made to the said Alice V. Dickinson in the sum of $24.00.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."